IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JoAnne Sivak, | ) | C/A No.: 4:10-1832-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER OF DISMISSAL |
| Town of Atlantic Beach and Officer | ) | |
| Terrance Wiggins, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the court on the failure of Plaintiff and her attorney, Gary White, to fully respond to the court's July 21, 2011 and September 2, 2011 orders. [Entry #36, #50]. For the reasons stated herein, this case is dismissed.

Plaintiff originally filed her complaint on July 14, 2010, pursuant to 42 U.S.C. § 1983 against defendants Terrance Wiggins and the Town of Atlantic Beach ("Town"). [Entry #1]. Plaintiff alleged that Wiggins arrested her and illegally patted her down "for his sexual enjoyment and because Defendant Town's policy allowed it." *Id.* at ¶ 9. Plaintiff alleges that after Wiggins "illegally recovered a white rock which resembled cocaine," she was forcibly taken to the Town's police department. *Id.* at ¶¶ 10–11. Plaintiff asserts causes of action for illegal search, arrest without probable cause, conspiracy, sex discrimination, abuse of process, battery, assault and battery, and race discrimination. A summons was issued as to the Town, which answered on September 23, 2010 [Entry #9], and a scheduling order issued on November 10, 2010 [Entry #11]. No record exists of Plaintiff having served the complaint on Wiggins. On December 16,

2010, counsel for Plaintiff and the Town consented to jurisdiction by the undersigned United States Magistrate Judge, with the reference effective January 28, 2011. [Entry #16, #19].

On March 7, 2011, the South Carolina Supreme Court definitely suspended Mr. White from the practice of law for 90 days for, *inter alia*, violating professional conduct and disciplinary rules by sending to his client church's landlords and to the Town manager a letter that questioned whether the Town manager had a soul, stated that the manager had no brain, and called the leadership of the Town "pagans," "insane," and "pigheaded." *In re White*, 707 S.E.2d 411 (S.C. 2011).

Attorney Ian McVey was appointed as trustee for Plaintiff's files and to protect her interests. [Entry #24]. Mr. McVey filed a motion to stay this case on March 15, 2011. [Entry #26]. The court granted the motion to stay and noted that the stay would be lifted on the earlier of June 14, 2011 or when a Notice of Appearance of new counsel was filed on Plaintiff's behalf. [Entry #27]. On June 17, 2011, the court entered an order directing counsel to file by June 27, 2011, a report indicating the status of the case and whether it was appropriate to lift the stay. [Entry #29]. On June 27, 2011, Mr. McVey filed a letter with the court stating that "[w]hile I have been involved with this matter for some ninety days, the Plaintiff has yet to retrieve her file despite my requests that she do so," and asked for a further continuance until Mr. White was re-admitted by the South Carolina Bar. [Entry #31]. Plaintiff submitted a handwritten letter to the court filed on June 30, 2011, indicating that she had "been having difficulty finding a new lawyer" and that she

2

would be pro se until she found counsel. [Entry #33]. The Clerk's Office docketed the letter as a motion for extension of time. *Id.* On July 18, 2011, the Town filed a response to the motion, noting that it had contacted "Plaintiff's current counsel of record to inquire as to Plaintiff's representations status, but has not received a response. Accordingly, the Town does not object to Plaintiff's Motion for Extension of Time." [Entry #34].

On July 21, 2011, the court issued an order lifting the stay, noting that it appeared that Mr. White had been reinstated to practice law in South Carolina, and directed Plaintiff and her counsel to file a status report by August 18, 2011, addressing whether Plaintiff wished to proceed with her case and whether Mr. White would remain as counsel.[1] [Entry #36]. The order specified that "The status report should be signed by both Mr. White and Plaintiff. In the event that Plaintiff plans to proceed without Mr. White as counsel, she is instructed to direct her new counsel to file a motion for substitution of counsel by August 18, 2011, or inform the court that she plans to proceed on her own without counsel." *Id.* The order was placed in U.S. Mail to Plaintiff at her address of record in Pennsylvania as noted in her motion for extension and served on Mr. White through the court's Electronic Case Filing. [Entry #38].

Notwithstanding the specific instructions set forth in the court's July 21, 2011 order, both Plaintiff and Mr. White failed to comply with the order. Based on the failure

---

[1] In light of a prior suspension of Mr. White by the South Carolina Supreme Court for having acted without his client's authority, *see In re White*, 663 S.E.2d 21 (S.C. 2008), the undersigned wished to ensure Plaintiff's consent to Mr. White's post-2011 suspension representation.

to comply, on August 23, 2011, the court again directed Plaintiff and her counsel to file a response to the order and advised that failure to comply by September 6, 2011 would result in the case being dismissed for failure to prosecute. [Entry #42]. The order was mailed to Plaintiff and served on Mr. White through the court's Electronic Case Filing. [Entry #43].

On August 30, 2011, Plaintiff's counsel filed a document entitled "Status Report." [Entry #49]. The report indicated that Mr. McVey was authorized by the South Carolina Supreme Court to return Mr. White's files to him on August 17, 2011.  The report also noted that no discovery had been conducted in this case due to Mr. White's suspension. Although the report indicated Mr. White "continued to represent Plaintiff," it was not signed by Plaintiff as specifically required by the court's prior two orders.

Therefore, on September 2, 2011, the court ordered Plaintiff and her counsel to fully comply with the court's July 21, 2011 order by September 12, 2011. [Entry #50]. Specifically, Plaintiff and her counsel were instructed to file a status report by September 12, 2011, addressing whether Plaintiff wished to proceed with her case and whether Mr. White was to remain as counsel. *Id.*  The status report was to be signed by both Mr. White and Plaintiff. *Id.*  Additionally, the report was to indicate the last date on which Mr. White had spoken with Plaintiff. *Id.*  The court warned that "[f]ailure to fully comply with the court's orders will result in dismissal of this case and no further extensions will be granted absent exceptional circumstances." *Id.*   The order was mailed to Plaintiff and served on Mr. White through the court's Electronic Case Filing. [Entry #52].

Again, notwithstanding the specific instructions set forth in the court's September 2, 2011 order, both Plaintiff and Mr. White failed to comply with the order. Rather than comply with the specific instructions of the court's orders, Mr. White chose instead to file a Notice of Appearance on September 8, 2011 indicating his contact information. [Entry #55]. Despite clear directions in the orders of July 21, 2011, August 23, 2011, and September 2, 2011, Plaintiff and Mr. White failed to inform the court as to the very basic questions of whether Plaintiff wished to proceed with her case and whether she wished Mr. White to remain as counsel. No report signed by Plaintiff was submitted to the court. Mr. White likewise failed to inform the court as to the last date he spoke with Plaintiff, further creating doubt that Plaintiff wishes to continue with this case and with Mr. White representing her.

The Supreme Court has recognized that a federal district court has the inherent power to dismiss a case *sua sponte* for failure to prosecute, even though the language of Fed. R. Civ. P. 41(b) appeared to require a motion from a party:

> The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That it has long gone unquestioned is apparent not only from the many state court decisions sustaining such dismissals, but even from language in this Court's opinion in *Redfield v. Ystalyfera Iron Co.*, 110 U.S. 174, 176 (1884). It also has the sanction of wide usage among the District Courts. It would require a much clearer expression of purpose than Rule 41(b) provides for us to assume that it was intended to abrogate so well-acknowledged a proposition.

*Link v. Wabash R. Co.*, 370 U.S. 626, 630–632 (1962) (footnotes omitted).

Before dismissing a case with prejudice, the Fourth Circuit has stated that the district court must give a party a "clear and explicit" warning of the consequences of failing to satisfy the court's conditions and orders. *See, e.g., Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 472 (4th Cir. 1993). The undersigned's order dated September 2, 2011 clearly and explicitly stated "Failure to fully comply with the court's orders will result in dismissal of this case and no further extensions will be granted absent exceptional circumstances." [Entry #50 at 2]. Plaintiff and Mr. White have asked for no further extensions and have utterly failed to articulate any good cause for the delay. Such a blatant disregard for the court's orders evidenced bad faith warranting dismissal. *See Mutual Fed. Sav. & Loan Ass'n v. Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (holding that dismissal with prejudice is proper when a "party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules").

In considering the propriety of the dismissal, the undersigned has considered the need to deter noncompliance with directives of the court. The Supreme Court has held that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

Plaintiff and Mr. White chose to ignore no fewer than three court orders.  In light of the dramatic increase in federal court litigation, the courts must efficiently manage their dockets.  As the Supreme Court has stated as to the similar issue of discovery abuse, "[f]or it is the court's duty to protect the interests not only of the parties directly prejudiced by discovery abuse, but also those litigants indirectly prejudiced when the court's resources are squandered due to an abusing party's misconduct." *Cf. National Hockey League*, 427 U.S. at 643 (affirming district court's dismissal with prejudice of appellant's case under Rule 37, in part, because "it might well be that [petitioner] would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts."); 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 2284, at 640 (3d ed. 2011) (noting that district courts are "partly due to the pressure of crowded dockets, tak[ing] a tougher view of sanctions for discovery violations since the 1980s, and that sanctions are, as the Supreme Court invited in *National Hockey League*, now being looked to for their deterrent effect in other cases rather than merely as a remedy for the wrong done in the case at hand.").

A note is in order about the impact of dismissal on Plaintiff.  Although a litigant generally chooses counsel at its peril, *see Link*, 370 U.S. at 633–34, "'justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings.'" *Lolatchy v. Arthur Murray, Inc.*,

816 F.2d 951, 953 (4th Cir. 1987) (*quoting United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982)); *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (recognizing the "strong policy that cases be decided on the merits" and that imposition of a dismissal sanction should include consideration of "the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney" because "we seldom dismiss claims against blameless clients"). However, in this instance, Plaintiff's actions and inactions vitiate against finding her blameless.

The court interprets Plaintiff's interest in her case as limited, if at all. Despite notification that her attorney had been suspended and could no longer represent her, she did not obtain alternate counsel. Further, she failed to retrieve her file from the trustee despite his months of involvement in seeking to protect Mr. White's clients' interests and his request that Plaintiff retrieve her file from him. [Entry #31]. After her case had been pending for nearly one year without any progress, Plaintiff indicated to the court that she would continue pro se until she found counsel. [Entry #33]. Thereafter, she did not communicate with the court, despite three orders explicitly requiring her to do so. The court finds dismissal with prejudice pursuant to Fed. R. Civ. P. 41(b) appropriate under the circumstances of this case. The Clerk is instructed to close the case.

IT IS SO ORDERED.

September 13, 2011                           Shiva V. Hodges
Florence, South Carolina                     United States Magistrate Judge